UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at Ashland

| | | |
|---|---|---|
| JENNIFER SHELL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | 0:25-cv-00096-SCM-EBA |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| MICHAEL D. COUCHOT, M.D., et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is before the Court regarding the Defendants' *Daubert* Motion to exclude the testimony of Dr. Dean DeLuke. [Dkt. 53]. The Court held a hearing on this Motion on October 30, 2026. At that hearing, the Court inquired as to how Dr. DeLuke's testimony would assist the trier of fact when the salient issue was whether Dr. Couchot had committed the intentional tort of battery by performing the medical procedure in question without consent. In other words, the Court was puzzled as to how expert testimony would help the trier of fact determine whether there was consent in this case because that is a simple question of fact that merely hinges on whether the jury finds the Plaintiff's or the Defendants' version of the facts to be more credible. *See Andrew v. Begley*, 203 S.W.3d 165, 171 (Ky. Ct. App. 2006) ("An action for battery 'is different from a negligence action for medical malpractice because the claim depends on neither professional judgment nor the physician's surgical skill.'" (quoting *Vitale v. Henchey*, 24 S.W.3d 651, 656 (Ky. 2000))). The Plaintiff's counsel

clarified that this is not just a battery case—the Plaintiff is also pursuing a negligence case in the alternative. That is, the Plaintiff is arguing that even if she consented to the medical procedure, the Defendants are still liable for the PTSD and other emotional distress that she has suffered because Dr. Couchot breached the standard of care by performing the procedure while the Plaintiff was having a panic attack. The Court expressed skepticism that Kentucky law allows a Plaintiff to sue a medical professional for psychological and emotional distress caused by a medical procedure that was both performed with consent and correctly. Because of the significance that this question has for both the merits of the negligence claim and the admissibility of Dr. DeLuke's expert testimony, the Court asked the parties to brief the issue. Having now considered the question further, and having reviewed the parties' briefs on the matter, the Court concludes that Kentucky law allows the Plaintiff to make a negligence claim in the alternative under these circumstances and that most—but not all—of Dr. DeLuke's proposed testimony is admissible.[1]

The key point here is that Kentucky law allows a plaintiff in a negligence case to recover emotional distress damages in the absence of physical injury. *See Osborne v. Keeney*, 399 S.W.3d 1, 14–17 (Ky. 2012). And "[m]edical malpractice is but a specific branch of the common law tort of negligence." *Lake Cumberland Reg'l Hosp., LLC v. Adams*, 536 S.W.3d 683, 690 (Ky. 2017). Thus, the ordinary principles of negligence

[1] The Plaintiff has also asked the Court to certify the question to the Kentucky Supreme Court in the event that the Court is uncertain whether Kentucky law allows her negligence claim. [Dkt. 69]. Finding that Kentucky law is sufficiently clear on this point, the Court sees no need to certify the question and will deny that request.

law apply to a claim for medical malpractice. This means that physicians—like other members of society—have a duty to conduct themselves in the way that a reasonably prudent individual in their circumstances would. *See, e.g.*, *Hyman & Armstrong, P.S.C. v. Gunderson*, 279 S.W.3d 93, 115 (Ky. 2008). This duty is not limited simply to performing medical procedures in the way that a reasonably prudent physician would perform them. Rather, *all* of a physician's professional conduct must conform to this standard. *See Love v. Walker*, 423 S.W.3d 751, 757–58 (Ky. 2014) (allowing a negligence claim based on an allegation that the physician acted negligently in electing to perform a surgery even though there was no evidence that the surgery itself was performed negligently). The only difference between a medical negligence claim and a regular negligence claim is one of proof. That is, Kentucky law requires the plaintiff in a medical negligence case "to present expert testimony that establishes (1) the standard of skill expected of a reasonably competent medical practitioner and (2) that the alleged negligence proximately caused the injury." *Morris v. Boerste*, 641 S.W.3d 688, 698 (Ky. Ct. App. 2022) (quoting *Andrew*, 203 S.W.3d at 170). Here, the Plaintiff intends to introduce such evidence—Dr. DeLuke's testimony on the standard of care and the testimony of other experts on the issue of causation. So there is no reason under Kentucky law why the Plaintiff cannot proceed with her medical negligence claim.

Of course, Kentucky law does not allow a negligence plaintiff who has suffered no physical injury to recover damages based on the mere allegation—or even slight proof—of emotional distress. *Osborne*, 399 S.W.3d at 17–18. And for good reason. If

a plaintiff could open the door to liability simply by testifying that a defendant caused him or her to suffer some amount of emotional distress—no matter how trivial—then negligence cases would flood the courts and there would potentially be no end to liability. After all, "emotional tranquility is rarely attained and . . . some degree of emotional harm is an unfortunate reality of living in a modern society." *Id.* at 17 (citing Restatement (Third) of Torts: Phys. & Emot. Harm §§ 46 cmt. 1, 47 cmt. J (A.L.I. 2012)). Thus, Kentucky law requires that a negligence plaintiff seeking to recover for emotional distress in the absence of physical harm must do more than offer proof that he or she was upset or distressed by the defendant's negligence. Rather, such a plaintiff can recover only upon proof of "'severe' or 'serious' emotional injury." *Id.* (quoting *Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996)). The Kentucky Supreme Court elaborated on this standard in *Osborne*, explaining:

> A "serious" or "severe" emotional injury occurs where a reasonable person, normally constituted, would not be expected to endure the mental stress engendered by the circumstances of the case. Distress that does not significantly affect the plaintiffs [*sic*] everyday life or require significant treatment will not suffice. And a plaintiff claiming emotional distress damages must present expert medical or scientific proof to support the claimed injury or impairment.

*Id.* at 17–18 (footnotes and citations omitted). Because the Plaintiff is claiming such emotional injury and intends to support her claim with the requisite expert proof at trial, Kentucky law allows her negligence claim to proceed to trial.

The Defendants, however, point to *Meador v. Arnold*, 94 S.W.2d 626 (Ky. 1936), as proof that Kentucky law does not allow recovery for mental or emotional distress

in the absence of physical injury.[2] In reality, however, *Meador* is more helpful to the Plaintiff than the Defendants. As the Defendants correctly point out, *Meador* holds:

> The presumption of negligence is never indulged in from the mere evidence of mental pain and suffering of the patient, or from failure to cure, or poor or bad results, or because of the appearance of infection. The burden of proof is upon the patient to prove the negligence of the physician or surgeon, and that such negligence was the proximate cause of his injury and damages.

94 S.W.2d at 631. But the Plaintiff is not arguing that negligence should be presumed from the fact that she has suffered mental pain and suffering. Instead, she is arguing that Dr. Couchot acted negligently—*i.e.*, that he breached the standard of care—by performing the procedure when she was undergoing a panic attack and that her subsequent mental and emotional distress has been caused by that negligent conduct. Thus, she is making precisely the type of claim that *Meador* recognizes she can make. Of course, *Meador* also says that the Plaintiff bears the burden of proving Dr. Couchot's negligence, but the Plaintiff does not contest that point. To the contrary, the Plaintiff intends to offer expert proof of the standard of care and the causation of damages.

The Defendants also contend that the Plaintiff's proof is ultimately irrelevant because there is no evidence that the procedure itself was performed incorrectly, and therefore no proof of the causation of damages. This misses the mark for two reasons.

---

[2] The Defendants also cite *Blair v. Eblen*, 461 S.W.2d 370 (Ky. 1970), although they do not explain why they think *Blair* supports their argument. It is not clear what relevance *Blair* has to this case. *Blair* primarily addressed how a jury should be instructed on contributory negligence in a medical malpractice action and how the jury instructions in such a case should articulate the physician's standard of care, not whether a negligence action against a physician can be premised on emotional distress in the absence of physical injury. *See id.* at 372–74.

First, it misstates Kentucky law. As explained above, a successful medical negligence claim does not necessarily require proof that a particular medical procedure was performed incorrectly. Instead, all that is required is proof that Dr. Couchot breached the standard of care—which encompasses *all* of his professional conduct, not just the technical performance of a procedure, *see Love*, 423 S.W.3d at 757—and proof that the breach proximately caused damages. That is exactly what the Plaintiff alleges and intends to prove. Second, the Defendants' argument misconstrues the Plaintiff's claim. By her own admission, the Plaintiff is not alleging that the procedure was performed incorrectly. Instead, she is asserting that Dr. Couchot breached the standard of care—and in doing so caused injury in the form of mental and emotional distress—by performing the procedure when she was undergoing a panic attack. Under general principles of Kentucky negligence law, this is a cognizable claim.

And not only is the negligence claim cognizable under Kentucky law, but it is properly supported by Dr. DeLuke's testimony—at least in part. Given Dr. DeLuke's academic credentials and forty-plus years of experience as a maxillofacial surgeon, it is clear that he is qualified through personal knowledge and experience to offer a reliable opinion on the standard of care a physician should adhere to when deciding whether to proceed with oral surgery. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). Moreover, such testimony will pertain to technical or other specialized knowledge that will assist the trier of fact. *See* Fed. R. Evid. 702(a). Indeed, without such testimony, lay jurors would have no way of determining the standard of care that a maxillofacial surgeon should adhere to under these

circumstances, and therefore would have no way of determining whether that standard was breached in this case. *See Miller v. Love*, No. 06-154-HRW, 2008 WL 11342676, at *2 (E.D. Ky. Sep. 11, 2008) (quoting *Blair v. Eblen*, 461 S.W.2d 370, 373 (Ky. 1970)). Thus, the Court concludes that Dr. DeLuke's testimony is relevant and admissible under Rule 702 to the extent that he testifies about the standard of care to which a physician should adhere under circumstances like those at issue here. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008) (noting that Rule 702 requires a proposed expert witness have the requisite qualifications, whether it be through "knowledge, skill, experience, training, or education," that the proposed testimony be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue," and that the testimony "be reliable" (quoting Fed. R. Evid. 702)).

But there is one limitation on the admissibility of Dr. DeLuke's testimony. He will not be allowed to testify specifically that Dr. Couchot breached the standard of care by performing the procedure without the Plaintiff's consent. Such testimony would not assist the trier of fact to understand any fact in issue. *See* Fed. R. Evid. 702(a). The reason for this is that Dr. Couchot's conduct would amount to battery, not negligence, if he performed the procedure without consent. *See Vitale*, 24 S.W.3d at 656–57. Battery is an entirely distinct tort from negligence. *See id.* And a breach of some standard of care is not an element of battery. Instead, a defendant is liable for battery simply when: "(a) he acts intending to cause a harmful or offensive contact with the person of the other . . . and (b) a harmful contact with the person of the other

directly or indirectly results." *Id.* at 657 (quoting Restatement (Second) of Torts § 13 (A.L.I. 1965)). So if the jury concludes that Dr. Couchot performed the procedure without consent, then Dr. DeLuke's testimony that it was a breach of the standard of care will be irrelevant and unhelpful to the trier of fact because it will not pertain to any fact that is in issue.

To be clear, however, Dr. DeLuke will still be able to testify that—in his opinion—it would have been a breach of the standard of care for Dr. Couchot to perform the procedure *with consent* if the Plaintiff were undergoing a panic attack at the time. In his expert report, Dr. DeLuke stated, "[i]t is my professional opinion that it was a breach of the standard of care for Dr. Couchot to move forward with the extraction procedure after the patient, Ms. Shell, verbally withdrew her consent and/or 'had a panic attack.'" [Dkt. 55-1 at 2]. In other words, Dr. DeLuke has offered an opinion that Dr. Couchot breached the standard of care in either of two alternative scenarios—*i.e.*, if he lacked consent, or, no matter whether he had consent, if he performed the procedure after the Plaintiff had a panic attack. As explained above, the former portion of the opinion addresses a situation that falls within the tort of battery, and so it is not a relevant opinion. But the latter, alternative portion of his opinion addresses whether there would be a breach of the standard of care in the event that the Plaintiff gave consent but was nevertheless experiencing a panic attack. That portion of his opinion is relevant and helpful to the trier of fact, so it is admissible.

For these reasons, it is hereby **ORDERED** as follows:

1) The Defendants' *Daubert* Motion, [Dkt. 53], is **DENIED** in part and **GRANTED** in part consistent with this opinion.

2) The Plaintiff's motion to certify, [Dkt. 69], is **DENIED**.

3) The Defendants' motion for leave to file a reply, [Dkt. 70], is **GRANTED**, and the tendered reply shall be filed in the record.

Signed this 13th day of November, 2026.

S. Chad Meredith, District Judge
United States District Court
Eastern District of Kentucky